UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASMINE HARRIS, ex rel. AND
DANESHA SPARKS,

               Plaintiffs,

v.

NAJEE MALONE, *et al*.,

               Defendants.

_____/

Case No. 2:20-cv-13354
District Judge Laurie J. Michelson
Magistrate Judge Anthony P. Patti

## ORDER DENYING PLAINTIFFS' MOTION TO APPEAL DENIAL OF DEFAULT JUDGMENT (ECF No. 20) AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 10)

## I. RECOMMENDATION:

The Court should **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss. (ECF No. 10.) All claims in Plaintiffs' first amended complaint (FAC) (ECF No. 5) should be dismissed with the exception of Plaintiffs' Fourth Amendment illegal seizure claim against Defendants Malone and Coney, in their individual capacities only. In addition, Plaintiffs' motion to appeal denial of default judgment (ECF No. 20) is **DENIED**.

## II. REPORT

### A. Background

#### 1. Factual Background

Plaintiffs Jasmine Harris[1] and DaNesha Sparks, proceeding *in pro per*, filed the instant action on December 22, 2020, against Defendants the City of Highland Park, Troy's Towing, Troy Ginyard, as well as Highland Park Mayor Hubert Yopp, Police Chief Hilton Napoleon, Fire Chief Kevin Coney, and city employees Najee Malone and M. Khalil in their individual and official capacities.  The original complaint listed the following claims, all related to the removal of a vehicle and "tiny house"/"tiny home" from property Plaintiffs claim to own: (1) violation of Michigan Compiled Laws (MCL) 125.3407 – establishment of procedure for zoning grievances; (2) customary actions by Highland Park Police Department – failure to train; (3) violation of MCL 600.113 – citation issuing procedure; (4) violation of MCL 750.377 – willful and malicious destruction of property; (5) violation of MCL 750.411h – harassment; (6) violation of MCL 600.2918 – forcible eviction; (7) violation of MCL 750.356a motor vehicle – taking possession and driving away; (8) violation of MCL 750.227b – use or possession of dangerous weapon; (9) violation of MCL 750.213 – malicious threat to extort money; and (10) violation of Highland Park Charter Chapter 6, Section 5 – ordinance records.  (ECF No. 1, PageID.7-17.)

---

[1] The docket and complaint indicate that Plaintiff Harris is proceeding as a relator in the case, perhaps because she allegedly "invokes the power of the Attorney General to lodge this complaint" (ECF No. 5, PageID.35, ¶ 4), but the Undersigned believes she mistakenly used this designation, as discussed more fully below.

In so doing, Plaintiffs alleged that in August 2020, Defendant Officer Malone visited their property in Highland Park and insisted the City owned the property.  (ECF No. 1, PageID.4, ¶ 14.)  Defendant Malone returned to the property on September 20, 2020, and placed an orange sticker on Plaintiffs' recreational vehicle (RV), with directions to remove the RV within 72 hours. (ECF No. 1, PageID.4, ¶ 15.)  Then, on October 5, 2020, Plaintiff Sparks moved the RV over the property line.  (ECF No. 1, PageID.5, ¶ 17.)

On October 20, 2020, Defendant Malone wrote ticket #30112ET indicating that a permit would be required for fencing on the property.  (ECF No. 1, PageID.5, ¶ 18.)  Plaintiff Harris attempted to set a court date for the ticket on October 27, 2020.  (ECF No. 1, PageID.5, ¶ 19.)

Defendants Malone and Coney again visited the property on November 12, 2020, and Coney "interrogated" Plaintiff Harris.  (ECF No. 1, PageID.5, ¶ 20.)  No one produced a citation or ticket, however, until an hour later when Defendant Malone returned and placed orange tow stickers on the tiny house and RV.  (ECF No. 1, PageID.6, ¶¶ 21-22.)  Then on November 17, 2020, "8 police cars and 2 tow trucks came to [the] property tore down [the] fence and came to tow [the] tiny house and RV.  I had to pay $900 fee to the tow guy to take my RV to another location and not the impound lot[.]"  (ECF No. 1, PageID.6, ¶ 23.)

3

On February 17, 2021, the Court entered an order dismissing without prejudice Counts 1 and 3-10 of Plaintiffs' complaint. (ECF No. 4, PageID.33.) In so doing, the Court read the complaint liberally to include an unreasonable seizure claim under the Fourth Amendment, but declined to exercise supplemental jurisdiction over the state law claims. (ECF No. 4, PageID.31-32.) Count 2, a claim for municipal liability under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), remained part of the case. (ECF No. 4, PageID.32.)

Rather than proceed with what remained of the original complaint, Plaintiffs filed a first amended complaint (FAC) on February 18, 2021, which raised the same claims in the original complaint as Counts 3-12, plus two additional claims: (1) a violation of their Fourteenth Amendment rights, and (2) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985. (ECF No. 5, PageID.41-45, ¶¶ 31-50.) Since the FAC appears to have been timely filed under Fed. R. Civ. P. 15(a)(1) and its timeliness is unchallenged by Defendants, the Court should consider it the operative pleading in the case.

### 2. Instant Motions

#### a. Defendants' motion to dismiss (ECF No. 10)

On March 16, 2021, Defendants filed a motion to dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that: (1) Plaintiffs

impermissibly engaged in shotgun pleading; (2) Plaintiff Harris lacks standing because she has failed to satisfy the prerequisites required for relator status; (3) Plaintiffs are attempting to litigate criminal claims in a civil action; (4) Plaintiffs fail to state an equal protection claim; (5) Plaintiffs fail to identify a municipal policy that caused a constitutional violation; (6) Defendants are entitled to qualified immunity; (7) Plaintiffs' claims are barred by governmental immunity; (8) Count 5 fails to provide notice of the claim alleged; (9) Plaintiffs' claim under MCL 600.2819 fails because Plaintiffs were not wrongfully evicted by their landlord; (10) Plaintiffs fail to state a conspiracy claim under 42 U.S.C. § 1985; (11) the Court should dismiss Count 12 because there is no private cause of action for violating the city ordinance; and (12) to the extent Plaintiff alleges constitutional violations against the towing company and its owner, they are not state actors subject to suit under 42 U.S.C. § 1983.  (ECF No. 10, PageID.98-99, 109-122.)

Plaintiffs timely filed their response in opposition on April 15, 2021, stating that they "are maintaining that their 5th and 14th Amendment protected rights have been violated by Defendants."  (ECF No. 14, PageID.128.)  Specifically, Plaintiffs argue that: (1) the FAC is not a shotgun pleading because "[t]he Court has declined to hear all state law claims, and all federal claims that are left are plead[ed] clearly and unambiguously"; (2) they were deprived of due process because Defendants

entered private property and removed items without authority or redress, in

violation of the Fourteenth Amendment and the Michigan Zoning Enabling Act;

(3) the City of Highland Park is not immune from suit, as "its agents and hired

hitman Troy Ginyard broke centuries of well cemented Law, statutes and cases to

enforce a supposed ordinance violation"; (4) Defendants are "using Qualified

Immunity as a smoke screen not to address the underlying Due Process violation";

and (5) Defendants' counsel's representation of both state and non-state actors

creates a conflict of interest in violation of Michigan Rule of Professional Conduct

(MRPC) 1.7.  (ECF No. 14, PageID.128-132.)

 In their April 20, 2021 reply brief, Defendants reiterate the arguments made

in their motion to dismiss, but also specifically address the assertions Plaintiffs

make in their response.  Defendants argue, for example, that Plaintiffs vacillate

between substantive and procedural due process.  (ECF No. 15, PageID.134.)

Further, Defendants' counsel disputes that he cannot represent both government

and civilian Defendants in the same lawsuit.  (ECF No. 15, PageID.138.)

  **b.** **Plaintiffs' motion to appeal denial of default judgment (ECF No. 20)**

 On April 22, 2021, Plaintiffs requested Clerk's Entry of Default against

"Najee Malone, et al." pursuant to Fed. R. Civ. P. 55(a) (ECF No. 18), which the

Clerk's Office denied the next day for the following reason: "A motion to dismiss

was filed on 03/16/21 (doc. 10)" (ECF No. 19).  Before the Court now is Plaintiffs'

May 7, 2021 motion, pursuant to Fed. R. Civ. P. 3, "to appeal the court's decision entered on April 23, 2021."  (ECF No. 20.)[2]  Plaintiffs argue that a motion to dismiss is not a legitimate responsive pleading under Fed. R. Civ. P. 7 or 15(a), notwithstanding the express provisions of Fed. R. Civ. P. 12(b) and 12(a)(4), which permit motions asserting certain defenses to be made "before pleading if a responsive pleading is allowed" and which provide that "serving a motion under this rule alters" the period for filing a responsive pleading.  (ECF No. 20, PageID.149.)  Nevertheless, they assert, Defendants are in default for failing to timely answer the FAC, and they request that the Court "overturn it's [sic] decision and grant 1) the Plaintiff's motion for default judgment and 2) grant the relief sought in the complaint."  (ECF No. 20, PageID.150.)

Defendants did not respond to the motion until November 10, 2021, over six months after it was filed, and argue that Plaintiffs did not seek concurrence for motion in accordance with E.D. Mich. Local Rule 7.1(a), the district court is not the proper forum for appellate review, and Plaintiffs have not established a sufficient basis for the relief sought.  (ECF No. 25.)  Defendants are correct that Plaintiffs' motion to appeal does not comply with E.D. Mich. Local Rule 7.1.

**B.    Standard**

---

[2] Fed. R. Civ. P. 3 reads, in its entirety, "A civil action is commenced by filing a complaint with the court."  It does not commence or perfect an appeal to a higher court.

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations" but must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). To make this determination, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented, nor may courts construct the plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dep't*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.) (internal citations omitted).[3]

## C. Discussion

### 1. Plaintiff's motion to appeal denial of default judgment (ECF No. 20)

Considering Plaintiffs' *pro se* status, the Court construes this as a motion for default or default judgment as opposed to an appeal.

Under Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

---

[3] *See also Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

is shown by affidavit or otherwise, the clerk must enter the party's default." <u>That circumstance does not exist here</u>.

In lieu of filing an answer to Plaintiffs' FAC, Defendants filed a motion to dismiss that complaint pursuant to Fed. R. Civ. P. 12(b)(6), which is a proper response. And a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). *See also Jones v. Chase Bank N.A.*, No. 12-11706, 2012 WL 2131187, at *1 (E.D. Mich. June 12, 2012) (denying the plaintiff's motion for default judgment because the defendants "filed a pleading in response to Plaintiff's Complaint. They filed a timely motion to dismiss."); *Harris v. Members of Bd. of Governors of Wayne State Univ.*, No. 10-11384, 2010 WL 3369142, at *1 (E.D. Mich. Aug. 25, 2010) ("Without question, Parrish filed a motion to dismiss under Rule 12(b)(6). Without question, Parrish is not required to file an answer at this time."); *Phelps v. Am. Gen. Fin. Servs.*, No. 08-10552, 2008 WL 3978318, at *3 (E.D. Mich. Aug. 22, 2008) (Borman, J.) (adopting report and recommendation of Majzoub, M.J.) ("[A] defendant may properly defend as required by Fed. R. Civ. P. 55(a) in ways other than filing an answer, such as by filing a motion to dismiss for failure to state a claim."). Accordingly, Plaintiffs' motion to appeal denial of default judgment (ECF No. 20), treated as a motion for default or default judgment, is **DENIED**.

2. **The Court should not dismiss Plaintiffs' FAC based on Defendants' arguments that Plaintiff Harris lacks standing to sue, or that it constitutes a "shotgun pleading"**

   a. **Shotgun pleading**

Defendants first assert, in their motion to dismiss, that Plaintiffs' FAC should be considered a "shotgun pleading" that violates Fed. R. Civ. P. 8(a). (ECF No. 10, PageID.109-110.) The phrase "shotgun pleading"

> is not widely used in the Sixth Circuit. One practice that this circuit has condemned is failing to "connect specific facts or events with the various causes of action she asserted." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392 (6th Cir. 2020) (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013)). The Court held that this type of complaint "violate[s] Rule 8(a)(2)'s requirement that [a plaintiff] provide the defendants 'adequate notice of the claims against them and the grounds upon which each claim rests.'" *Id.* at 392-93 (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). A plaintiff also violates Federal Rule of Civil Procedure 10(b) when she "fail[s] to separate each of her causes of action or claims for relief into separate counts." *Id.* at 393.

*Gant v. Ford Motor Co.*, 517 F.Supp.3d 707, 713-14 (E.D. Mich. 2021).

Although Plaintiffs' FAC could be significantly clearer, *pro se* complaints are held to less stringent standards. *Frengler*, 482 F. App'x at 976-77. Plaintiffs list twelve claims, most of which are identical to claims previously dismissed without prejudice by the Court (ECF No. 4, PageID.33), but each contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, the Court should decline to dismiss Plaintiffs' FAC on the basis that it is a "shotgun pleading" in violation of Fed. R. Civ. P. 8(a).

11

### b.   Standing

Defendants' argument that "[s]ince Plaintiff Harris is bringing this action as a relator without the prerequisites, she should be dismissed" (ECF No. 10, PageID.110), also lacks merit.  Although Plaintiff Harris has identified herself as a relator in the caption of the original complaint and the FAC, as stated above, the Undersigned believes it to be a mistaken designation by a *pro se* plaintiff.  The False Claims Act, 31 U.S.C. § 3729 *et seq.*, "allow[s] a private party known as a 'relator' to bring an FCA action on behalf of the Government."  *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 137 S.Ct. 436, 440 (2016) (citing 31 U.S.C. § 3730(b)(1)).

This is not a False Claims Act case.  Instead, Plaintiff Harris alleges that she owned the property from which Defendants removed the subject tiny house and RV (*see* ECF No. 5, PageID.37, ¶ 14), and that Defendants' actions in removing those items violated the law.  Accordingly, the Court should reject Defendants' standing argument.

### 3.   The Court should dismiss Count 2 of Plaintiffs' FAC against each Defendant for failure to state a claim upon which relief could be granted

In Count 2 of the FAC, Plaintiffs provide a block quote which appears to combine the closing clauses of 42 U.S.C. § 1985, subsections (2) & (3) [all mislabeled as subsection "a"]:

> [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

(ECF No. 5, PageID.43, ¶ 40.)  They then allege that "Defendants entered into a conspiracy with one another with the intent to deny Plaintiffs equal protection of the laws including but not limited to the intent to deprive Plaintiffs of use of their personal and private property."  (ECF No. 5, PageID.43, ¶ 42.)   They demand damages and costs under subsection 3.  (ECF No. 5, PageID.44, ¶ 47.)

Plaintiffs have not alleged facts that would adequately state a claim under § 1985.  The first clause of § 1985(2) is not applicable to this case, as it prohibits conspiracies to influence parties, witnesses, and jurors in federal court proceedings. 42 U.S.C. § 1985(2).  Both the second clause of § 1985(2), and § 1985(3), which prohibits conspiracies to deprive individuals of equal protection, require allegations that there were "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006) (quoting *Kush v. Rutledge,* 460 U.S. 719, 726 (1983)).  *See also Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or

13

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.  The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.").[4]

Plaintiffs' Count 2 contains no allegations of either.  While it contains extremely broad "labels and conclusions" or perhaps even a "formulaic recitation of the elements of a cause of action," Plaintiffs do not plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Thus, Count 2 fails to state a claim for violation of 42 U.S.C. § 1985 and should be dismissed.

### 4.    Plaintiffs' constitutional claims

---

[4] As stated in *Kush*:

> Three of the five broad categories [of § 1985], the first two and the fifth, relate to institutions and processes of the federal government—federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3). **** The remaining two categories, however, encompass underlying activity that is not institutionally linked to federal interests and that is usually of primary state concern.  The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts, and the first part of § 1985(3) provides a cause of action against two or more persons who "conspire or go in disguise on the highway or on the premises of another."  Each of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws.

*Kush*, 460 U.S. at 724-25 (internal citations omitted).

For the reasons that follow, the Court should find that Plaintiffs have failed to state due process or equal protection claims and dismiss Count 1 as well as Count 5 to the extent it raises a procedural due process claim, against each Defendant.

Plaintiffs bring their constitutional claims pursuant to 42 U.S.C. § 1983. "'Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law.'" *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (quoting *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)).

In Count 1 of Plaintiffs' FAC, they claim violations of due process and equal protection under the Fifth and Fourteenth Amendments.  (ECF No. 5, PageID.41-42, ¶¶ 31-38.)  Specifically, they state that "Defendant deputies" violated "(a) the right to liberty protected in the substantive component of the Due Process Clause of the Fifth and Fourteenth Amendments, which includes personal safety, freedom from captivity, and a right to medical care and protection[,]" and "(b) the right to fair and equal treatment guaranteed by the Equal Protection Clause of the Fourteenth Amendment[.]"  (ECF No. 5, PageID.41, ¶ 32.)  In so doing, they assert that "Defendant deputies, acting under color of state law, took[,] trespassed onto Plaintiffs' property with no authority and proceeded to remove Plaintiffs personal

15

property[,]" and "Defendant Highland Park Police Department,[5] acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference to individuals such as Plaintiffs."  (ECF No. 5, PageID.42, ¶¶ 33, 37.)

Additionally, as Defendants point out in their motion to dismiss (ECF No. 10, PageID.119-120), Plaintiffs appear to couch a procedural due process claim within Count 5 of the FAC, alleging that Defendants Malone and Coney trespassed on private property to issue citations, and stating generally that due process requires notice and an opportunity to be heard (ECF No. 5, PageID.47-48, ¶¶ 41-46).  For the reasons that follow, even construing the FAC in the light most favorable to Plaintiffs, the Court should find that Plaintiffs have failed to state plausible due process or equal protection claims.

### a.    Equal protection

> The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  This provision thus requires that all similarly situated individuals be treated similarly.  *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

*PHN Motors, LLC v. Medina Twp.*, 498 F. App'x 540, 548 (6th Cir. 2012).  "To state an equal protection claim, a plaintiff must adequately plead that the

---

[5] Plaintiffs have not named the Highland Park Police Department as a defendant in this case.

government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).  The Supreme Court has recognized an equal protection claim brought by a "class of one" "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, beyond stating in a conclusory manner that Defendants denied them equal protection, Plaintiffs fail to allege that Defendants treated them differently than similarly situated individuals.  Without such an allegation, their equal protection claim must fail.

### b.    Due process

For the reasons that follow, Plaintiffs also fail to state either a substantive or procedural due process claim.

### i.    Procedural due process

"The Fourteenth Amendment to the United States Constitution protects individuals from the deprivation 'of life, liberty, or property, without due process of law.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting U.S. Const. amend. XIV, § 1).  "Procedural due process is traditionally

17

viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property[.]" *Id*. "To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that '(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" *Id*. (quoting *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). "Generally, procedural due process requires a state actor to 'provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest.'" *Dubuc v. Green Oak Twp.*, 642 F.Supp.2d 694, 703 (E.D. Mich. 2009) (quoting *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005)).

Again, in Count 5 of the FAC, Plaintiffs appear to claim a violation of their procedural due process rights (ECF No. 5, PageID.47-48, ¶¶ 41-46), and argue in their brief in response to Defendants' motion to dismiss that "[t]he Defendants extorted and forcibly removed the Plaintiffs without stating 1) what the 'violation' was 2) not providing how to cure and 3) prohibiting proper ways to redress the government and make a grievance" (ECF No. 14, PageID.129). But these claims are directly contradicted by the facts Plaintiffs allege in their FAC. As alleged by Plaintiffs, the individual Defendants visited the subject property on numerous occasions, provided verbal warnings regarding removal of the tiny house and RV,

wrote tickets, and marked the RV and tiny house with orange tow stickers.  (ECF No. 5, PageID.38-40, ¶¶ 14-24.)  And although Plaintiffs allege that they requested a court date for one of the tickets issued (ECF No. 5, PageID.39, ¶ 19), they do not allege denial of that request.

Accordingly, even viewing the allegations in the FAC in the light most favorable to Plaintiffs, the Court should conclude that they failed to state a procedural due process claim under Count 5.

### ii.    Substantive due process

Plaintiffs' Count 1 substantive due process claim also fails.

> The interests protected by substantive due process are much narrower than those protected by procedural due process.  Interests protected by substantive due process include: interests protected by specific constitutional guarantees; interests so rooted in the traditions and conscience of our people as to be deemed "fundamental rights;" and the right to freedom from government actions so arbitrary and abusive as to "shock the conscience."  *Bell v. Ohio State University*, 351 F.3d 240, 249-250 (6th Cir. 2003).

*Puckett v. Lexington-Fayette Urban Cty. Gov't*, 566 F. App'x 462, 472 (6th Cir. 2014).  "[T]he list of fundamental interests is short and includes: the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment."  *Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 759 (6th Cir. 2015) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

19

Plaintiffs do not allege the violation of an interest protected by a specific constitutional guarantee or any of the fundamental interests identified above. And, even accepting all well-pleaded allegations as true, none assert conduct the Court should consider conscience-shocking in violation of due process. The "characterization applies to only the most egregious official conduct, conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547-48 (6th Cir. 2012) (internal citations and quotations omitted; alteration in original). If true, Plaintiffs' allegations that Defendants tore down their fence and towed their RV and tiny house (ECF No. 5, PageID.40, ¶ 23) are serious, but not so egregious as to shock the conscience. At most, the actions demonstrate administrative incompetence or irresponsibility, which is not enough to support the alleged constitutional violation. *See Brown v. Detroit Pub. Sch. Community District*, 763 F. App'x 497, 504 (6th Cir. 2019) (*citing Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). Accordingly, the Court should find that Plaintiffs have failed to state a plausible substantive due process claim.

### c.   Fourth Amendment illegal seizure

In its February 17, 2021 order, the Court dismissed all but Count 2 (what is now Count 4 of Plaintiffs' FAC – Customary Actions by Highland Park Police Department: Failure to Train) of Plaintiffs' original complaint, but read that

complaint as asserting an unreasonable seizure claim under the Fourth

Amendment.  (ECF No. 4, PageID.30.)  In so doing, it stated: "[T]he Court will

dismiss Count 1 and Counts 3 through 10 without prejudice.  Count 2, which

appears to be a *Monell* claim, will remain part of this case.  Harris and Sparks'

Fourth Amendment claim will also remain part of this case."  (ECF No. 4,

PageID.32.)

However, in both versions of their pleadings, Plaintiffs failed to explicitly

flesh out a Fourth Amendment seizure claim in their FAC, stating only, under a

heading called "Legal Authority":

25. 42 USC 1983 et. seq.

26. 42 USC 1985 et. seq.

27. "4th, 5th and 14th Bill of Rights: *Unlawful Search & Due
Process*[.]"

(ECF No. 5, PageID.40-41, ¶¶ 25-27; compare ECF No. 1, PageID.6-7, ¶¶ 25-26.)

As such, it is questionable whether the Court should continue reading such a claim

into Plaintiffs' case.  Nevertheless, as Plaintiffs' FAC is identical to the original

complaint with the addition of two claims, and Judge Michelson has previously

found that such a claim had been stated under the liberal rules for *pro se* pleading

in the context of the set of facts alleged (ECF No. 4, PageID.32), I believe the law

of the case doctrine requires reading the FAC as also alleging a Fourth Amendment

illegal seizure claim.

21

Defendants do not make any specific argument with regarding to any Fourth

Amendment claim, but do address generally municipal liability, qualified

immunity, and the towing defendants' status as state actors.  (ECF No. 10,

PageID.112-117, 121-122.)  Accordingly, I will apply those arguments as if made

in regard to Plaintiffs' Fourth Amendment claim.

> **i.    The Court should dismiss Plaintiffs' Fourth Amendment claim against Defendant City and the individual Defendants in their official capacities**

To the extent, if at all, Plaintiffs raise a Fourth Amendment claim against

Defendant City or the individual Defendants in their official capacities, the Court

should dismiss those claims.

In Count 4 of Plaintiffs' FAC, they allege that Defendant Napoleon, "as

Highland Park Police Chief, condones and perpetuates the reckless and the

unlawful behavior of his police force," and "created a culture and custom denying

the Plaintiffs and others rights."  (ECF No. 5, PageID.46, ¶¶ 35-36.)  "A

municipality 'may not be sued under § 1983 for an injury inflicted solely by its

employees or agents.'"  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)

(quoting *Monell*, 436 U.S. at 694); *Collins v. City of Harker Heights, Tex.*, 503

U.S. 115, 122 (1992) (a city or county cannot be held responsible for the

unconstitutional actions of its employees under § 1983 simply because it employed

those individuals).  To prevail in a § 1983 claim against a municipality, a plaintiff

22

must show that "the alleged federal violation occurred because of a municipal policy or custom." *Burgess*, 735 F.3d at 478 (citing *Monell*, 436 U.S. at 694); *Jones v. Muskegon Cty.*, 625 F.3d 935, 946 (6th Cir. 2010) ("Liability may be imposed on a county only when a county 'policy' or 'custom' caused the plaintiff's injury and a 'direct causal link' existed between the policy and the purported [constitutional deprivation]."). Specifically, a plaintiff must "identify the policy, connect the policy to the city itself[,] and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (internal quotation marks and citations omitted). Further, for a failure to train claim, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference[.]" *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). *See also Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694 and *Bryan*, 520 U.S. at 410).

Nowhere in Count 4 do Plaintiffs identify a specific policy or custom or allege a pattern of constitutional violations by untrained employees. Rather, Plaintiffs only provide a formulaic recitation of the elements of a municipal liability claim, *Twombly*, 550 U.S. at 555, with no connection to the facts alleged in the FAC. This failure to identify a policy or custom and connect that policy or

custom to Defendant Napoleon or Defendant City is fatal to any municipal liability claim. And although Plaintiffs list state statutes and city ordinances in Counts 3 and 5-12 of the FAC, these claims are identical to those the Court dismissed in its February 17, 2021 order. Thus, it is clear the Court did not consider those claims or allegations part of Plaintiffs' Fourth Amendment illegal seizure claim. *See Cariega v. City of Reno*, No. 16-00562, 2017 WL 1900980, at *3 (D. Nev. May 8, 2017) ("The FAC's mere legal conclusion that there is a 'pattern or practice' without pointing to specific decisions of the City of Reno's lawmakers, specific acts of the City's policymaking officials, or factual examples of practices so persistent as to have the force of law, is insufficient under the pleading standards of *Iqbal*/*Twombly* to withstand a motion to dismiss under Rule 12(b)(6).").

The Court should also dismiss the Fourth Amendment claim to the extent, if at all, it is made against the individual Defendants in their official capacities. In the caption and body of the FAC, Plaintiffs indicate that they are suing Defendants Malone, Coney, Khalil, Napoleon, and Yopp in their individual and official capacities. (ECF No. 5, PageID.34, 36.)

For claims brought under 42 U.S.C. § 1983:

[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing *Monell*[, 436 U.S. at 690 n.55] ("Official capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent.")); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit

> against an individual in his official capacity is the equivalent of a suit
> against the governmental entity.")  As long as the governmental entity
> receives notice and an opportunity to respond, an official-capacity suit
> "imposes liability on the entity that he represents."  *Brandon v. Holt*,
> 469 U.S. 464, 471-72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)[.]

*Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).

Accordingly, Plaintiffs' Fourth Amendment claim brought pursuant to §

1983 against Defendants Malone, Coney, Khalil, Napoleon, and Yopp in their

official capacities should be treated as claims against Defendant City and

dismissed, as Plaintiffs have failed to state a plausible claim for municipal liability.

*See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) ("'[A] section

1983 action against a city official in his or her official capacity is treated as an

action against the City entity itself.'") (quoting *Barber v. City of Salem*, 953 F.2d

232, 237 (6th Cir. 1992)).

> ii.  **The Court should dismiss Plaintiffs' Fourth**
> **Amendment claim to the extent made against**
> **Defendants Napoleon and Yopp in their**
> **individual capacities**

"Section 1983 does not permit individuals to sue state actors in the abstract;

it requires them to connect alleged constitutional violations of the individuals'

rights to state conduct." *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608,

614 (6th Cir. 2018).  In other words, a Plaintiff must demonstrate that the

individual defendant was personally involved in the activity forming the basis of

the complaint.  *Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

The only specific allegations Plaintiffs make against Defendant Yopp are under Count 3 of the FAC – Violation of MCL 125.3407 Establishment of Procedure for Zoning Grievances, and relate to his alleged failure to ensure the City Planning Commission designed zoning grievance procedures.  (ECF No. 5, PageID.45-46, ¶¶ 51-53.)  Thus, Plaintiffs have not alleged that Defendant Yopp was personally involved in activity related to their Fourth Amendment seizure claim.  And "'Section 1983 liability will not be imposed solely upon the basis of respondeat superior.'"  *Taylor v. Mich. Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy*, 729 F.2d at 421).  Accordingly, Plaintiffs' Fourth Amendment claim against Defendant Yopp in his individual capacity should be dismissed.

Counts 8 and 9 of the FAC contain specific factual allegations against Defendant Napoleon, but the Court dismissed those same claims in Plaintiffs' original complaint, and thus apparently did not consider them part of Plaintiffs' Fourth Amendment seizure claim.  The only other specific allegations against Defendant Napoleon are those summarized above under Plaintiffs' overly vague Count 4 custom and policy claim which, as provided herein, the Court should dispose of.  Accordingly, Plaintiffs' Fourth Amendment claim, to the extent

asserted against Defendant Napoleon in his individual capacity, should be dismissed.

### iii. Defendants Malone, Coney, and Khalil in their individual capacities

Although Defendants do not address any Fourth Amendment illegal seizure claim, they do generally assert entitlement to qualified immunity in their motion to dismiss.

> "To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Courtright* [*v. City of Battle Creek*], 839 F.3d [513,] 518 [(6th Cir. 2016)] (quoting [*Johnson v.*] *Moseley*, 790 F.3d [649,] 653 [(6th Cir. 2015)]); *see Heyne* [*v. Metro. Nashville Pub. Sch.*], 655 F.3d [556,] 562 (6th Cir. 2011)] (quoting [*Back v.*] *Hall*, 537 F.3d [552,] 544 [(6th Cir. 2008)]) ("Just as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted, . . . so we review an assertion of qualified immunity to determine only whether the complaint adequately alleges the commission of acts that violated clearly established law."). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Courtright*, 839 F.3d at 518 (quoting *Heyne*, 655 F.3d at 562-63).

> "This Court has consistently held that damage claims against government official arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne*, 655 F.3d at 564 (emphasis in original) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Accordingly, "[w]e must analyze separately whether [Plaintiffs] ha[ve] stated a plausible constitutional violation by each individual defendant . . . ." *Id*.

27

> "[A]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Osberry v. Slusher*, No. 17-4242, ---Fed.Appx.----, ----, 2018 WL 4360979, at *4 (6th Cir. Sept. 13, 2018) (quoting *Courtright*, 839 F.3d at 518); *see Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)) (stating that "it is 'generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity,' [and we prefer] instead that courts resolve the issue at summary judgment.").

*Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898-99 (6th Cir. 2019).

"The Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures, shall not be violated . . . ." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (internal citation omitted). And the right has long been clearly established. *Hensley v. Gassman*, 693 F.3d 681, 694 (6th Cir. 2012) (citing *Haverstick Enters., Inv. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994)).

"A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal*, 506 U.S. at 61 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). And the Supreme Court in *Soldal* held that the alleged illegal towing of a mobile home from one property to another, taken as true, "constitute[d] a 'seizure' within the meaning of the Fourth Amendment[.]" *Soldal*, 506 U.S. at 72.

Viewing the allegations in the FAC in the light most favorable to Plaintiffs, and holding the FAC to the less stringent standards afforded to *pro se* complaints, the Court should conclude that Plaintiffs have stated a Fourth Amendment illegal seizure claim against Defendants Malone and Coney. Plaintiffs allege that they, not Defendant City, owned the property from which their tiny house and RV were towed, that Defendant Coney entered the property on November 12, 2020, to interrogate them, and that Defendant Malone wrote a ticket that a permit was required for fencing, and visited the property on multiple locations to place orange tow stickers on the RV and tiny house. (ECF No. 5, PageID.37-40, ¶¶ 14-23.) And Defendants Malone and Coney should have known that such conduct violated Plaintiffs' Fourth Amendment rights, especially in light of longstanding Supreme Court precedent that the right to be free from illegal seizure under the Fourth Amendment is clearly established. *Hensley*, 693 F.3d at 694 (citing *Haverstick Enters., Inv.*, 32 F.3d at 994). Accordingly, at this early stage of the proceedings, the Court should decline to find that Defendants Malone and Coney are entitled to qualified immunity.

However, the Court should find that Plaintiffs have failed to state a Fourth Amendment claim against Defendant Khalil. The single factual allegation stated against Defendant Khalil in the FAC is that he gave Plaintiff Harris a ticket for illegal window tint on an unidentified vehicle. (ECF No. 5, PageID.40, ¶ 24.)

### iv.    Defendants Ginyard and Troy's Towing

Defendants argue that Defendants Ginyard and Troy Towing cannot be subject to § 1983 liability because they are not state actors.  (ECF No. 10, PageID.121-122.)

Section 1983 generally does not apply to private parties acting in their individual capacities, but only to state actors.  *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 783 (6th Cir. 2007).

> The "ultimate issue" in determining whether a private party is subject to suit under § 1983 is whether "the alleged infringement of federal rights [is] fairly attributable to the State."  *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (quotation marks omitted).  This court applies the three tests articulated by the Supreme Court for determining the existence of state action under § 1983: "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test."  *Chapman v. Higbee Co.,* 319 F.3d 825, 833 (6th Cir. 2003).

*Campbell*, 509 F.3d at 783-84.  It does not appear that either the public function or compulsion tests apply here.

The nexus or symbiotic relationship test "requires a plaintiff to 'demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself.'" *Campbell*, 509 F.3d at 784 (quoting *Chapman*, 319 F.3d at 834).  However, "[a] plaintiff must show more than joint activity with the state to prove that a private party working for the government is a state actor.  In particular, she must

demonstrate 'pervasive entwinement' between the two entities surpassing that of a mere contractual relationship." *Partin v. Davis*, 675 F. App'x 575, 586-87 (6th Cir. 2017) (holding that towing company defendants entitled to summary judgment because although they shared a contractual relationship with the county, no facts in the record suggested the parties were pervasively entwined).

Here, Plaintiffs do not even name Defendants Gunyard or Troy Towing in the factual allegations of the FAC, stating only, "[On] November 17, 2020, 8 police cars and 2 tow trucks came to my property tore down my fence and came to tow my tiny house & RV.  I had to pay $900 fee to the tow guy to take my RV to another location and not the impound lot[.]"  (ECF No. 5, PageID.40, ¶ 23.)  Nor do they allege any specific relationship between the towing defendants and state actors.  Accordingly, Plaintiffs have stated no allegations that the towing defendants were "pervasively entwined" with Defendant City such that the towing defendants could be considered state actors for purposes of § 1983 liability, and the Court should dismiss any Fourth Amendment claim made against them*.  See Plummer v. Detroit Police Dep't,* No. 2:17-cv-10457, 2017 WL 1091260, at *3-4 (E.D. Mich. Mar. 23, 2017) ("Gene's Towing apparently had some kind of a relationship with the City of Detroit or the State of Michigan, because it is listed on the State's Notice of Abandoned Vehicle as the custodian or location where the vehicle was being held.  Nevertheless, the facts, as alleged in the complaint,

indicate that the towing company played no role in determining that Plaintiff's vehicle was abandoned or in deciding to seize Plaintiff's vehicle.") (internal citation omitted).

### 5.    Plaintiffs' state law claims

As Plaintiffs acknowledge in their response to Defendants' motion to dismiss, "The Court has declined to hear all state law claims, and all federal claims that are left are plead clearly and unambiguously." (ECF No. 14, PageID.128.) Nonetheless, they still include nine counts of state claims in their FAC. Notably, several of these (Counts 6, 7, 9, 10 & 11) appear to seek relief under state criminal statutes, and thus may not survive state court scrutiny in any case. This is so because "the general rule is that a private right of action is not maintainable under a criminal statute." *Am. Postal Workers Union v. Indep. Postal Sys., Inc*., 481 F.2d 90, 93 (6th Cir. 1973) (*cert. granted and then dismissed*). *See also*, *Bass Angler Sportsman Society of Am. v. U.S. Steel* Corp., 324 F.Supp. 412, 415 (N.D. Ala. 1971), *aff'd*., 447 F.2d 1305 (5th Cir. 1971) ("Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions."). Consistent with what it did in its February 17, 2021 order (ECF No. 4, PageID.31-32), and for the same reasons, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and

32

dismiss Counts 3 and 5-12 of Plaintiffs' FAC without prejudice to refiling them in state court. *See* 28 U.S.C. § 1367(a) and (c)(2); *Grace v. USCAR*, 521 F.3d 655, 679-80 (6th Cir. 2008).

### 6. MRPC

Finally, the Court should reject Plaintiffs' argument, made in response to Defendants' motion to dismiss, that Defendants' counsel is violating MRPC 1.7 by representing state and non-state actors. (ECF No. 14, PageID.131-132.) Plaintiffs provide no specific legal support for this assertion. And should the Court agree with my analysis above, Defendants Gunyard and Troy Towing, the two non-state actors, will be dismissed from this case.

### D. Conclusion

The Court should **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss. (ECF No. 10.) All claims in the FAC should be dismissed with the exception of Plaintiffs' Fourth Amendment illegal seizure claim against Defendants Malone and Coney, in their individual capacities only. In addition, Plaintiffs' motion to appeal denial of default judgment (ECF No. 20) is **DENIED**.

## III. PROCEDURE ON OBJECTIONS

### A. Report and Recommendation

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*. If the Court determines that any objections are without

merit, it may rule without awaiting the response.

**B.     Order on Discovery Motion**

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED.**

Dated:  November 30, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE